UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LEONARD DEPEW, | CASE NO. 3:15CV1553 |
| Plaintiff, | |
| | MAGISTRATE JUDGE |
| v. | GEORGE J. LIMBERT |
| CAROLYN W. COLVIN[1], | |
| ACTING COMMISSIONER OF SOCIAL | MEMORANDUM OPINION |
| SECURITY ADMINISTRATION, | AND ORDER |
| Defendant. | |

Plaintiff Leonard DePew ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying his application disability insurance benefits ("DIB"). ECF Dkt. #1. In his brief on the merits, filed on November 20, 2015, Plaintiff claims that the administrative law judge ("ALJ") erred: (1) in his determination that Plaintiff did not meet or medically equal a listed impairment; and (2) by failing to follow the rules and regulations regarding the evaluation of Plaintiff's pain, the consideration of all relevant evidence, and the assessment of Plaintiff's limitations. ECF Dkt. #14 at 2. On February 17, 2016, Defendant filed a response brief. ECF Dkt. #18. Plaintiff filed a reply brief on March 7, 2016. ECF Dkt. #21.

For the following reasons, the Court REVERSES the ALJ's decision and REMANDS Plaintiff's case to the ALJ for analysis consistent with the instant Memorandum Opinion and Order.

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

**I.     FACTUAL AND PROCEDURAL HISTORY**

On July 20, 2012, Plaintiff filed an application for DIB, alleging disability beginning November 26, 2010. ECF Dkt. #11 ("Tr.") at 16.[2] Plaintiff's claim was denied initially and upon reconsideration. *Id.* On February 27, 2013, Plaintiff requested a hearing before an ALJ. *Id.*

On June 5, 2014, the ALJ denied Plaintiff's application for DIB. Tr. at 13. The ALJ found that Plaintiff last met the insured status requirement of the Social Security Act on September 30, 2011. *Id.* at 18. Continuing, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the period of his alleged onset date, November 26, 2010, through the date last insured, September 30, 2011. *Id.* The ALJ determined that Plaintiff suffered from the following severe impairments: diabetes mellitus; peripheral neuropathy; degenerative disc disease of the cervical spine; status post right shoulder arthroscopy; osteoarthritis; and obesity. *Id.* Following his analysis of Plaintiff's severe impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, through the date Plaintiff was last insured. *Id.* at 19. After considering the record, that ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following additional limitations: frequently climbing ramps or stairs; frequently balancing, stooping, kneeling, and crouching; occasionally crawling; never climbing ladders, ropes, or scaffolds; frequently handling and fingering objects with the right upper extremity, but only occasionally reaching overhead with the right upper extremity; avoiding all exposure to the operational controls of moving machinery and unprotected heights; and avoiding even moderate exposure to excessive vibrations. *Id.*

Next, the ALJ determined that Plaintiff was capable of performing past relevant work as an inside sales representative through the date last insured. Tr. at 23. The ALJ indicated that Plaintiff's

---

[2]All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

past relevant work did not require the performance of work-related activities precluded by Plaintiff's RFC. *Id.* Continuing, the ALJ found that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from November 26, 2010, the alleged onset date, through September 30, 2011, the date last insured. *Id.*

On August 7, 2015, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. Plaintiff filed a brief on the merits on November 20, 2015 asserting the following assignments of error:

1. The Commissioner erred in the determination that Plaintiff did not meet or medically equal a listed impairment at step three of the sequential evaluation.

2. The Commissioner failed to follow Social Security rules and regulations regarding the evaluation of Plaintiff's pain, consideration of all relevant evidence and the assessment of Plaintiff's limitations.

ECF Dkt. #14 at 2. Defendant filed a response brief on February 17, 2016. ECF Dkt. #18. On March 7, 2016, Plaintiff filed a reply brief. ECF Dkt. #21.

## II.    SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act until September 30, 2011, the date Plaintiff was last insured, and that he had not engaged in substantial gainful activity during the period from the alleged onset date, November 26, 2010, through the date last insured. Tr. at 18. The ALJ determined that Plaintiff had severe impairments, as discussed above, and that these severe impairments caused more than minimal work-related limitations. When making this determination, the ALJ discussed the opinion of Bruce Goldsmith, Ph.D., in which Dr. Goldsmith opined that there was insufficient evidence prior to the date Plaintiff was last insured to establish the presence of a cognitive impairment. *Id.* The ALJ also indicated that Roseann Umana, Ph.D., the state agency psychological consultant, agreed with the opinion of Dr. Goldsmith upon reconsideration. *Id.* at 19.

Next, the ALJ discussed his finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 19. The ALJ indicated that he considered the requirements of Listing 1.01 *et seq.*, specifically, Listing 1.02 (major dysfunction of a joint(s)),

Listing 1.04 (disorders of the spine), Listing 9.00 (endocrine disorders), and Listing 11.14 (peripheral neuropathies). *Id.* The ALJ stated that the requirements of Listing 1.02 were not satisfied because Plaintiff could perform fine and gross movements with the right upper extremity. Continuing, the ALJ stated that Listing 1.04 was not met because imaging studies of Plaintiff's cervical spine did not reveal evidence of nerve root compression and the requisite neurological deficits upon examination, and because none of Plaintiff's treating or examining physicians reported any of the necessary clinical, laboratory, or radiographic findings specified therein. *Id.* The ALJ indicated that Listing 9.00 was not met because the record did not establish the requisite level of hormonal imbalance and complications in Plaintiff's body. *Id.* Regarding Plaintiff's peripheral neuropathy, the ALJ stated that Listing 11.14 was not met because there was no evidence of disorganization of motor function as described in the Listing. *Id.*

Continuing, the ALJ discussed Plaintiff's RFC and the reasons for prescribing limitations, as described above. Tr. at 20-23. The ALJ indicated that Plaintiff was alleging disability due to a variety of impairments, including osteoarthritis, diabetes, neuropathy, right shoulder issues, a titanium plate in his neck, and an increased numbness and weakness in his right arm. *Id.* at 20. Next, the ALJ stated that Plaintiff filed his application for DIB on July 20, 2012, but only met the insured status requirements through September 30, 2011. *Id.* The ALJ also discussed testimony provided by Plaintiff at his hearing, namely, that Plaintiff testified: that his feet went numb and became painful due to neuropathy; he has pain in his right shoulder and drops things when using his right arm; has a difficulty walking long distances; and experienced problems with his memory. *Id.* It was noted by the ALJ that Plaintiff's testimony pertained to his [then] current difficulties and not the problems that he may have had in 2010 and 2011. *Id.*

The ALJ indicated that Plaintiff was injured in a motor vehicle accident in November 2010, which caused problems in his neck and right shoulder. Tr. at 20. As for Plaintiff' degenerative disc disease of the cervical spine, the ALJ stated that an MRI study in December 2010 demonstrated mild to moderate canal narrowing at C4-C5 and C5-C6, and moderate degenerative disc changes at multiple levels. *Id.* The ALJ indicated that in January 2011, motor, sensory, and reflex examinations of Plaintiff's extremities showed a pattern of cervical myelordiculopathy at C5-C6,

and that Plaintiff's degenerative changes were compounded by a ruptured disc at C5-C6. *Id.* Continuing, the ALJ stated that Plaintiff underwent anterior cervical discectomy and fusion at C5-C6 in February 2011, and reported increasing comfort and less crunching noises in his neck by March 2011. *Id.* The ALJ noted that in at a follow-up appointment in August 2011, Plaintiff was "doing quite well with good strength throughout both upper extremities," and that Plaintiff continued to participate in physical therapy. *Id.* The ALJ indicated that Plaintiff was discharged from the care of his neurosurgeon in February 2012 due to a normal neurological examination and well-healed wounds, and that Plaintiff was not taking any pain medications at that time. *Id.* at 20-21.

As for Plaintiff's right shoulder issues, the ALJ stated that a physical examination following the November 2010 motor vehicle accident was positive for diffuse tenderness primarily over Plaintiff's right shoulder with point tenderness over the site of the insertion of the rotator cuff. Tr. at 21. Continuing, the ALJ noted that Plaintiff underwent an MRI in December 2010 that demonstrated a complete tear of the subscapularis, incomplete tear of the supraspinatus with marked diffuse tendinopathy, probable partial tears of the infraspinatus tendon with extensive tendinopathy, and degenerative changes of the acromioclavicular joint. *Id.* The ALJ indicated that Plaintiff underwent a right shoulder arthroscopy with rotator cuff repair in May 2011 and attended physical therapy after the surgery, reporting that the physical therapy improved his symptoms. *Id.* The ALJ stated that Plaintiff's right shoulder was "feeling much better" with increased motion and strength and less pain than before the surgery. *Id.* According to the ALJ, while Plaintiff continued to experience problems with his right shoulder, those issues were accounted for by the limitations on overhead reaching, handling, and fingering in the RFC delineated by the ALJ. *Id.*

Moving on, the ALJ discussed Plaintiff's diabetes mellitus and peripheral neuropathy, stating that Plaintiff had been a diabetic for several years. Tr. at 21. The ALJ noted that Plaintiff presented in November 2011 complaining of sharp, shooting pain in his feet with numbness and tingling, but also stated that Plaintiff ambulated without an antalgic gait and his sensation was grossly intact. *Id.* Continuing, the ALJ stated that Plaintiff experienced pain along the fifth metatarsal of the right foot, but with no redness or swelling, and that x-rays demonstrated excellent joint alignment. *Id.* The

ALJ indicated that Plaintiff was diagnosed with diabetes with neuropathy and right foot pain, reported significant improvement with medication, and was fitted for custom-molded diabetic inserts and diabetic shoes. *Id.* Further, the ALJ stated that June 2012 treatment notes reflected that Plaintiff was doing well controlling his type 2 diabetes mellitus and that the numbness in his feet was stable. *Id.* Finally, the ALJ found that Plaintiff's impairments were exacerbated by his obesity and explained the reasons for this finding. Tr. at 21-22.

Following a discussion of Plaintiff's RFC, the ALJ discussed Plaintiff's credibility. The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely credible. Tr. at 22. To support his position, the ALJ stated that while Plaintiff did undergo surgery for the alleged impairments, the records reflected that surgery was generally successful in relieving the symptoms in Plaintiff's neck and shoulder. Additionally, the ALJ noted that he was limited to considering evidence of Plaintiff's impairments and the related RFC prior to September 30, 2011, the date Plaintiff last met the insured status requirement. *Id.*

The ALJ then discussed the opinion evidence present in the record. First, the ALJ considered the July 2011 opinion of Kirk Davis, D.O., indicating that Plaintiff could continue physical therapy without restrictions at that time. Tr. at 22. The ALJ also considered Dr. Davis' October 2011 opinion that Plaintiff should be careful and avoid jerking motions. Both of Dr. Davis' opinions were given great weight in limiting Plaintiff's use of the right upper extremity to frequent handling and fingering, and occasional reaching overhead. *Id.*

Next, the ALJ discussed the October 2012 opinion of state agency medical consultant Anton Freihofner, M.D., indicating that Plaintiff could: lift or carry up to twenty pounds occasionally and ten pounds frequently; sit for up to six hours in an eight-hour workday; stand and/or walk for up to six hours in an eight-hour workday; frequently climb ramps and stairs; frequently balance, stoop, kneel, and crouch; occasionally climb ropes, ladders, and scaffolds; occasionally crawl; and occasionally reach overhead with the right upper extremity. Tr. at 22. The ALJ also discussed the opinion of state agency medical consultant Eli Perencevivh, D.O. issued upon reconsideration. *Id.*

The ALJ indicated that Dr. Perencevich's opinion placed the same limitations on Plaintiff, except that Plaintiff was further limited to never climbing ladders, ropes, or scaffolds, and avoiding even moderate exposure to vibration and all exposure to hazards.  *Id.* at 22-23.  After indicating the substance of the opinions of the state agency consulting physicians, the ALJ indicated that he was affording some weight to the opinions to the extent that they were consistent with the RFC finding. *Id.* at 23.

The ALJ concluded the discussion of Plaintiff's credibility by stating that the credibility of Plaintiff's allegations was weakened by inconsistencies between the extent of his allegations and the objective medical evidence.  Tr. at 23.  The ALJ determined that Plaintiff did experience some level of pain, but only to the extent described in the RFC finding.  *Id.*

Based on the testimony of a vocational expert ("VE"), the ALJ determined that Plaintiff was capable of performing past relevant work as an inside sales representative. Tr. at 23.  Finally, the ALJ made the determination that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from November 26, 2010, the alleged onset date, through September 30, 2011, the date Plaintiff was last insured.  *Id.*

### III.    STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see  20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V.   LAW AND ANALYSIS

### A.   First Assignment of Error

Plaintiff's first assignment of error asserts:

1. The Commissioner erred in the determination that Plaintiff did not meet or medically equal a listed impairment at step three of the sequential evaluation.

ECF Dkt. #14 at 10. Specifically, Plaintiff argues that ALJ erred in determining that Plaintiff did not meet Listing 1.04(A) by finding that "imaging studies of the cervical spine did not reveal evidence of nerve root compression and the requisite neurological deficits upon exam." *Id.* at 11.

The Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 describes impairments for each of the major body parts that are deemed of sufficient severity to prevent a person from performing gainful activity. 20 C.F.R. § 416.920. In the third step of the analysis to determine a claimant's entitlement to social security benefits, it is the claimant's burden to bring forth evidence to establish that his impairments meet or are medically equivalent to a listed impairment. *Evans v. Sec'y of Health & Human Servs.*, 820 F.2d 161, 164 (6th Cir. 1987). In order to meet a listed impairment, the claimant must show that his impairments meet all of the requirements for a listed impairment. *Hale v. Sec'y,* 816 F.2d 1078, 1083 (6th Cir. 1987). An impairment that meets only some of the medical criteria and not all does not qualify, despite its severity. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

An impairment or combination of impairments is considered medically equivalent to a listed impairment "* * *if the symptoms, signs and laboratory findings as shown in medical evidence are at least equal in severity and duration to the listed impairments." *Land v. Sec'y of Health and Human Servs.*, 814 F.2d 241, 245 (6th Cir.1986) (per curiam). Generally, an ALJ should have a medical expert testify and give his opinion before determining medical equivalence. 20 C.F.R. § 416.926(b). In order to show that an unlisted impairment or combination of impairments is medically equivalent to a listed impairment, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531.

Listing 1.04 and 1.04(A) provide:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> > A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg test (sitting and supine)

Listing 1.04(A).

Plaintiff asserts that the record did not contain substantial evidence to support the ALJ's conclusion because while the imaging studies did not specifically mention nerve root compression, the operative surgical report did mention nerve root compression. ECF Dkt. #14 at 11. Specifically, Plaintiff states that the report explicitly stated "there was revealed a large extruded disk fragment up against the cord" and "the posterior [1/3] of the uncinated process was removed bilaterally for further decompress[ion] of the exiting nerve root." *Id.* (internal citations omitted). Plaintiff claims that the report shows that there was compression of the nerve root and should be dispositive of this issue. *Id.* Continuing, Plaintiff asserts that the remainder of the requirements of Listing 1.04(A) are likewise satisfied. Tr. are 11. In support of this assertion, Plaintiff argues that examination performed by Leo Clark, M.D., and physical therapy records following the surgery demonstrated a decreased range of motion. *Id.* at 11-12. Plaintiff indicates that he had an EMG on May 20, 2013 that was positive for acute chronic C6 radiculopathy showing that there was still a neuro-anatomic distribution of pain, and, prior to Plaintiff's cervical spine surgery, Dr. Clark's records show a neuro-anatomic distribution of pain, as well as sensory and motor loss. *Id.* at 12.

Defendant contends that while the ALJ did not address the surgical report indicating a successful decompression, this omission amounts to harmless error because the ALJ properly concluded that Plaintiff did not have the attendant, requisite neurological deficits to satisfy Listing 1.04. ECF Dkt. #18 at 10. Defendant then cites pages of the record that she believes show that Plaintiff did not meet or medically equal Listing 1.04, but does not provide any citation to the ALJ's decision demonstrating that the ALJ specifically considered these portions of the record when making his determination regarding Listing 1.04. *Id.* Likewise, Defendant argues that the ALJ's

conclusion finds strong support in the two medical opinions from state agency consulting physicians Dr. Freihofner and Dr. Perencevich, but provides no citation to where in the ALJ's decision these opinions were considered in conjunction with Listing 1.04. *Id.* at 10-11. Next, Defendant briefly contends that "the ALJ explicitly discussed much of the evidence that Plaintiff cites" to show that he exhibited the requisite neurological deficits to satisfy the Listing 1.04 criteria. *Id.* at 11. Finally, Defendant states, "Plaintiff's citation to evidence after his date last insured does not alter the reasonableness of the ALJ's conclusion because Plaintiff was required to prove that he became disabled prior to his date last insured." *Id.*

The entirety of the ALJ's discussion of Listing 1.04 at step three of the sequential evaluation is as follows:

> Section 1.04 is not met because imaging studies of the cervical spine do not reveal evidence of nerve root compression and the requisite neurological deficits upon examination. In addition, none of [Plaintiff's] treating or examining physicians of record have reported any of the necessary clinical, laboratory, or radiographic findings specified therein.

Tr. at 19.[3] Plaintiff is correct in asserting that the ALJ erred in the determination that Plaintiff did not meet or medically equal a listed impairment at step three of the sequential evaluation because the ALJ failed to properly consider 1.04. First, the ALJ indicated that an MRI of Plaintiff's spine did not reveal evidence of nerve root compression, but wholly failed to address Dr. Clark's surgical report stating:

> Working posteriorly under high-powered magnification, the posterior rim of the vertebral body was removed. There was revealed a large extruded disk fragment up against the cord, which was mobilized and removed... The posterior 1/3 of the uncinate process was removed bilaterally for further decompression of the exiting nerve roots. At the end of the dissection, the spinal dura and the exiting nerve roots were directly visualized were seen to be well decompressed. [sic]

Tr. at 285-86.

Defendant acknowledges that the ALJ failed to address this surgical report indicating a successful decompression, but maintains that this failure was harmless error because the ALJ properly concluded that Plaintiff did not have the requisite neurological defects to satisfy Listing

---

[3]The ALJ did not provide any citations regarding what medical evidence he relied upon when making his step three determination regarding Listing 1.04.

-11-

1.04, as discussed above. ECF Dkt. #18 at 10. However, to support this a assertion, Defendant cites portions of the record that were not cited by the ALJ in his step three analysis, and then relies on the opinions of the two state agency consulting physicians that likewise were not mentioned by the ALJ when considering Listing 1.04. Defendant fails to demonstrate that the ALJ considered these specific portions of the record, and, moreover, fails to show what medical evidence the ALJ relied upon when determining that Plaintiff did not meet Listing 1.04.

Defendant's brief argument that "the ALJ explicitly discussed much of the evidence that Plaintiff cites" when determining that Plaintiff did not exhibit the requisite neurological deficits to satisfy the Listing 1.04 criteria is not well taken. *See* ECF Dkt. #18 at 11. Defendant indicates that the ALJ discussed much of the same evidence regarding whether Plaintiff exhibited the requisite neurological deficits to satisfy the Listing 1.04 criteria, and asks the Court to compare a portion of the ALJ's decision with Plaintiff's arguments regarding his neurological deficits. *Id.* The portion of the ALJ's decision to which Defendant cites to support the contention that the ALJ discussed the same medical evidence Plaintiff raises to demonstrate that he exhibited the requisite neurological deficits to satisfy the Listing 1.04 criteria discusses Plaintiff' shoulder problems, diabetes mellitus, peripheral neuropathy, and obesity. *See* ECF Dkt. #18 at 11 (citing Tr. at 21). The medical evidence raised by Plaintiff discusses problems associated with his spine, not his shoulder, diabetes mellitus, peripheral neuropathy, or obesity, and it is unclear how Defendant believes "the ALJ explicitly discussed much of the evidence that Plaintiff cites" when determining that Plaintiff did not exhibit the requisite neurological deficits to satisfy the Listing 1.04 criteria.[4]

---

[4]Defendant also claims that the ALJ and Plaintiff cite identical records, indicating that the ALJ cited pages 467-49 [sic] of the Transcript (Exhibit 7F) (Tr. at 471-73, presuming Defendant meant pages 467-69 of the Transcript, the pages that are identical to the pages cited by Plaintiff) and Plaintiff cited pages 441-43 of the Transcript (Exhibit 6F) (Tr. at 444-46). ECF Dkt. #18 at 11. The ALJ makes no mention of Exhibit 6F in the portion of his decision presented by Defendant to support the contention that the ALJ and Plaintiff considered much of the same evidence, and Exhibit 7F is only mentioned a single time by the ALJ when asserting that Plaintiff was discharged from the care of his neurosurgeon in February 2012 and that he was not taking pain medications at that time. *See* Tr. at 20-21. It can hardly be said that "the ALJ explicitly discussed much of the same evidence that Plaintiff cites" when determining that Plaintiff did not exhibit the requisite neurological deficits to satisfy the Listing 1.04 criteria.

Finally, the Court agrees with Defendant that Plaintiff's citation to medical evidence dated after his date last insured has no effect on the reasonableness of the ALJ's conclusion as Plaintiff was required to prove that he became disabled prior to his date last insured. *See* ECF Dkt. #18 at 11. However, only one piece of evidence that Plaintiff claims shows that he exhibited the requisite neurological deficits to satisfy the Listing 1.04 criteria (office treatment records dated May 20, 2013) was created after Plaintiff's date last insured. *See* Tr. at 821. Plaintiff also cites daily treatment notes prepared by Dr. Clark on March 1, 2011, prior to September 30, 2011, Plaintiff's date last insured, in claiming that he exhibited the requisite neurological deficits to satisfy the Listing 1.04 criteria. ECF Dkt. #14 at 11-12. The ALJ makes no mention of Dr. Clark's treatment notes when making his step three determination, instead stating "none of [Plaintiff's] treating or examining physicians of record have reported any of the necessary clinical, laboratory, or radiographic findings" meeting the requisite neurological deficits required by Listing 1.04. Tr. at 19.

The ALJ failed to provide any indication in his decision that he considered the medical evidence, as discussed above, suggesting that Plaintiff may have suffered from nerve root compression, and failed to explain why he found that none of Plaintiff's treating or examining physicians of record have reported any of the necessary clinical, laboratory, or radiographic findings meeting the requisite neurological deficits required by Listing 1.04 when medical evidence exists that may by contrary to this finding. Upon remand, the ALJ must reconsider whether Plaintiff met or medically equaled the criteria of Listing 1.04, and, if the ALJ finds that Plaintiff does not meet the criteria, the finding must be explained and supported by substantial evidence.

### **B.** **Second Assignment of Error**

Plaintiff's second assignment of error asserts:

2. The Commissioner failed to follow Social Security rules and regulations regarding the evaluation of Plaintiff's pain, consideration of all relevant evidence and the assessment of Plaintiff's limitations.

ECF Dkt. #14 at 12. In light of the Court's decision to remand the instant case because the ALJ's decision was deficient at step three of the sequential evaluation, the Court declines to address these remaining allegations as the ALJ's re-evaluation and analysis on remand may impact his findings

on these issues in the remaining steps of the sequential evaluation. *See Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 417 (6th Cir. 2011).

## VI. CONCLUSION

For the reasons stated above, the Court REVERSES the ALJ's decision and REMANDS Plaintiff's case to the ALJ for analysis consistent with the instant Memorandum Opinion and Order.

Date: July 29, 2016         */s/George J. Limbert*
                                               GEORGE J. LIMBERT
                                               UNITED STATES MAGISTRATE JUDGE